·11311 ·

· STATE v. MURRAY

(121 S. E., 265)

1. CRIMINAL LAW—NEW TRIAL REQUIRED WHERE IT WAS IMPOSSIBLE TO SECURE EVIDENCE WHICH SOLICITOR REQUIRED TO BE INSERTED IN CASE FOR APPEAL.—Where defendant served a proposed case for appeal on the solicitor, and the solicitor agreed to the proposed case on condition that it would be amended by inserting certain testimony, and due to the death of the Court stenographer it was im-possible for defendant to secure that testimony, *held,* that a new trial should be granted.

2. CRIMINAL LAW—IN A PROSECUTION FOR OBTAINING MONEY UNDER FALSE REPRESENTATION AFTER DISCOVERED EVIDENCE HELD TO RE-QUIRE NEW TRIAL.—In a prosecution in which defendant was con-victed of obtaining money under false representations in a trans-action involving the sale of a blind mule, defendant's defense being that if the mule was blind he did not know it, after discovered evidence that the mule was not blind, *held* to require new trial.

Before RICE, J., and BOWMAN, J., Berkeley, November, 1919, and June, 1923. New trial granted.

E. L. Murray was convicted of obtaining money under false pretenses and appeals. Also from an order refusing a new trial on after discovered evidence the defendant ap-peals.

*Mr. Francis F. Carroll,* for appellant, cites: *Where transcript of record cannot be obtained new trial should be granted:* 110 S. E., 127; 118 S. E., 363; 107 S. E., 906. *After discovered evidence:* 118 S. E., 57. *Swindling act:* 1 S. C. L., 282. *No violation to sell blind mule for sound mule:* 1 S. C. L., 353.

*Mr. A. J. Hydrick, Solicitor,* and *Asst. Atty. Gen. J. M. Daniel* for the respondent. Oral argument.

October 27, 1923. Petition for rehearing dismissed. February 15, 1924.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

In May, 1923, the defendant filed the following petition in the Supreme Court.

"That on the 6th day of November, 1919, the defendant was tried and convicted at the Fall Term of the Court of General Sessions for the County of Berkeley of the alleged offense of obtaining money under false representations and sentenced by his Honor, Judge H. F. Rice, to pay a fine of one hundred and twenty-five ($125.00) dollars or serve three months' imprisonment; defendant's defense being that he did not know and there was no testimony or evidence that he knew that said representations were false, all of which matters were brought to the attention of the presiding Judge at the time by motions to direct a verdict for a new trial and in arrest of judgment and were overruled by the Court.

"That defendant immediately after the sentence served notice of appeal and was admitted to bail in the sum of three hundred ($300.00) dollars pending such appeal.

"That defendant in due time served a proposed case on Solicitor A. J. Hydrick, Esq., Solicitor for the First Circuit, but this case was not returned by Mr. Hydrick until the following September, 1920, a space of about 9 months, and in this case Mr. Hydrick agreed to the proposed case with certain proposed amendments, one of which was that there should be embodied in the proposed case certain testimony.

"That defendant through his attorney made every effort to obtain the testimony from the stenographer of the First Circuit, but failed to get it, and afterwards said stenographer, Herbert Glaze, Esq., fell into very bad health and has since died, and defendant has consequently never been able to perfect his appeal.

"That last fall 10 days before the convening of the Fall Term of the Court of General Sessions for Berkeley County, the Solicitor, Mr. Hydrick, served upon defendant's attorney notice that he would move before the Court at that term

to dismiss the appeal for the reason that it had not been perfected.

"When the Court met, defendant's attorney was sick in bed with dengue fever and the attorney wrote to Solicitor Hydrick and his Honor, Judge Memminger, and told them of this fact of his sickness and asking that the motion be deferred to some future date as said attorney was very anxious to be present at the hearing of said action, but neither defendant nor his counsel know whether the letters were received by Solicitor Hydrick or Judge Memminger before said appeal was dismissed. But defendant is informed that said appeal was dismissed by his Honor, Judge Memminger, on the motion of the Solicitor at that term of Court, and neither the defendant nor his counsel knew of such dismissal of the appeal until March, 1923.

"That defendant's intention was through his counsel to resist said action on the ground that it was impossible for him to get the evidence from the stenographer and perfect his appeal and ask for a new trial in order that the testimony might be reproduced.

"Wherefore your petitioner prays that this honorable Court may grant an order permitting the reinstatement of the appeal and permit this defendant to move before the Court of General Sessions for new trial or pass such order herein as may be deemed proper, and, until such motion is heard, to stay in the meantime the sentence of the Court, and your petitioner will ever pray," etc.

After hearing argument of the petitioner's attorney and of the Solicitor, this Court made an order granting the petition.

On the 8th day of June, 1923, the defendant's attorney served upon Solicitor Hydrick notice of a motion to set aside the verdict and sentence herein imposed upon the defendant and to grant him a new trial herein:

"First: In order that the evidence in the trial heretofore had may be reproduced in accordance with the order of the Supreme Court herein made dated May 16, 1923, hereto attached.

"And, second, on the further ground of after-discovered evidence, said after-discovered evidence being contained in the affidavits of Ancrum Waring and E. D. Myers, copies of which are hereto attached."

His Honor, Judge Bowman, refused the motion, and the defendant appealed upon the following exceptions:

"First: Because his Honor, Judge Bowman, refused to grant defendant's motion to set aside the verdict and judgment in said cause and grant a new trial as directed by the order of the Supreme Court in order that the evidence and testimony might be reproduced, the error complained of · being that his Honor should have held that under the order of the Supreme Court there was no alternative left to the Court except to grant the new trial on defendant's motion, and his duty under the facts.

"Second. Because his Honor Judge Bowman erred in refusing defendant's motion for a new trial on the ground of newly discovered evidence; the error complained of being that his Honor should have held that it being uncontradicted that the affidavits presented by defendant in support of said motion negatived for the first time the claim that the mule was blind as alleged in the indictment, and tended to prove that the representations alleged in the indictment to be false representations were not false and that the evidence contained in these affidavits was very strong and would likely have changed the verdict from one of guilty to one of not guilty had he granted the new trial, and his Honor's exercise of discretion in refusing defendant's motion for a new trial on such newly discovered evidence was,

23—S. C. R., 127.

appellant submits, erroneous to such an extent as to amount to error of law."

The affidavit of E. D. Myers was to the effect:

"That he remembers when E. L. Murray sold the mule to Paul Green in the fall of 1919; that he saw it the day after Paul Green bought it; that he came up on Paul Green when he was dragging off a dead mule with the mule he had just bought from E. L. Murray; that Sam Driggers, or Lights, a horse trader was then at the time remonstrating with Paul Green for buying a mule from E. L. Murray instead of from Sam Driggers, as Driggers was trying to sell Green a mule. Sam was telling Green all sorts of mean things about the mule Green had bought from Murray, that the mule was blind and no good; they called on me to see if the mule was blind, and I made a careful examination of the mule's eyes and found that the mule was not blind, but had what we horse traders called moon eyes; that is, the mule could see sometimes better than at other times. You could not tell that anything was weak about the mule's eyes unless you were a person of experience in such matters and made a very careful examination. I told Paul Green that the mule was not blind, but that I thought it would go blind in about two years. I was a horse trader at that time and well knew the value of mules. I considered that mule well worth $75 and told Green so at the time. I came off and left Sam Driggers still talking to Green and persuading him against the mule. The mule was in very good order at that time and appeared to be strong—strong enough to drag off a dead mule."

The affidavit of Ancrum Waring was to the effect:

"That he is a resident of Dorchester County and has been such resident of Summerville, Dorchester County, South Carolina, all his life, 36 years, and deals in horses and mules; that he remembers when E. L. Murray sold a mule to Paul Green in the fall of 1919; that Paul Green brought

the mule to deponent's stable in Summerville, South Caro
lina, a few days after he bought it and wanted to trade it
to deponent; that deponent examined the mule and consid-
ered it at that time a reasonably good mule, and he examined
the mule's eyes very carefully; that the mule was not blind,
but had what he considers moon eyes, that is, can see better
at some stages of the moon than others—or anyhow can see
better some times than at others—and from his long ex-
perience he thought the mule would likely go blind within
a few months or a year, and he told Paul Green this, that
being his experience with mules having moon eyes; that
these qualities in the mule's eyes would not be ordinarily
detected, but would require a careful examination by a per-
son of experience in such matters like himself, the deponent;
that deponent would say that, from his knowledge of values
as a live stock dealer, the mule when brought to his stable
at Summerville by Paul Green was worth about $75.   The
mule at that time was in fair order and appeared to be
sound."

The notice of motion was also accompanied by the affi-
davit of the defendant E. L. Murray, which was as follows:

"That at the time of his trial in this case he did not know
of the evidence contained in the affidavits of A. Waring and
E. D. Myers set forth in their affidavits hereto attached, and
that the evidence contained in said affidavits has been
recently discovered by him since his trial, and further that
he had not been able to find any evidence at the time of the
trial to disprove or contradict the state's witnesses testify-
ing that the mule was blind; the defendant testifying that if
the mule was blind the deponent did not know it."

It appears from the facts stated in the record that it was
impossible for the defendant to insert in his proposed case
the amendment proposed by the Solicitor, by reason of the
death of the stenographer.   Therefore it was error for his
Honor, Judge Bowman, to refuse the motion for a new

trial.   It was also error on the part of his Honor, Judge Bowman, to refuse the motion for a new trial, on the ground of after-discovered evidence, as the facts upon which that motion was made were very material and not disputed.

New trial.